## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRYAN JASON POVEY** and **JAMIE R. POVEY**, | Case No. 3:23-cv-01388-IM |
| Plaintiffs, | **OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION** |
| v. | |
| **CASTLE AND COOKE MORTGAGE**, *a Utah Corporation*, and **LOANCARE, LLC**, *a Virginia Limited Liability Company*, | |
| Defendants. | |

Bryan Jason PoVey and Jamie R. PoVey, Estacada, OR. Pro se.

John M. Thomas, McCarthy & Holthus, 920 SW Third Avenue First Floor, Portland, OR 97204. Attorney for Defendant Castle and Cooke Mortgage.

**IMMERGUT, District Judge.**

Before this Court is Plaintiffs Bryan Jason PoVey and Jamie R. PoVey's Motion for

Preliminary Injunction ("TRO & PI Mot."), ECF 2, under Federal Rule of Civil Procedure 65.

Appearing pro se, Plaintiffs are married homeowners seeking to enjoin Defendant Castle and

Cooke Mortgage ("Castle and Cooke"), the current mortgage note holder for their house, from

PAGE 1 – OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

selling the house at a foreclosure auction. *Id.* This Court held an evidentiary hearing on the

Motion on January 5, 2024. Minutes of Proceedings, ECF 54. After considering the evidence

presented by the Parties both during this hearing and in prior filings, this Court GRANTS

Plaintiffs' Motion for Preliminary Injunction, ECF 2, for the reasons stated on the record and set

forth below.[1]

## BACKGROUND

The following facts come from Plaintiffs' verified complaint, declarations submitted by

the parties, and live witness testimony—all of which this Court may considering in resolving a

motion for preliminary injunction. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir.

2009). All factual findings in this opinion are preliminary.

In 2015, Plaintiffs bought a home at 22865 South Cadonau Road, Estacada, Oregon.

Complaint ("Compl."), ECF 1 ¶¶ 4, 7. In September 2021, Plaintiffs contacted Castle and Cooke

about refinancing their home. *Id.* ¶ 8. As part of the refinancing process, on November 3, 2021,

Jamie PoVey, whom this Court refers to as "Mrs. PoVey," filled out several loan disclosure

documents, listing North Highland Consulting ("NHC") as her employer.[2] *Id.* ¶ 10. But on

November 15, 2021, NHC informed Mrs. PoVey that it planned to let her go and gave her two

options: either (1) resign immediately and receive a severance package with pay and insurance

benefits through December 2021, or (2) continue employment for six months and wait for her

---

[1] This Court notes that although Plaintiffs are appearing pro se, Bryan Jason PoVey has effectively operated as his wife's counsel in this case. Mr. PoVey is not currently a barred attorney. This Court does not opine at this time on the ethical propriety or permissibility of a pro se plaintiff acting as counsel for his pro se, co-plaintiff spouse.

[2] Although both Plaintiffs claim to be beneficiaries of the mortgage refinancing agreement here, only Mrs. PoVey is listed as a beneficiary on the agreement itself. *See* Deed of Trust, ECF 51-3, Ex. 103 at 13; Compl., ECF 1 ¶ 7.

employer to win contracts for consulting work in her area of expertise. *Id.* ¶ 12. Plaintiffs

contacted their loan originator at Castle and Cooke, Caleb Cannon, to inform him of the situation

and ask whether resigning immediately (i.e., Option 1) would affect the refinancing of their

home. *Id.* ¶¶ 9, 13. According to Plaintiffs, Mr. Cannon told them that Mrs. PoVey leaving her

job would not be an issue. *Id.* ¶ 13. He suggested that Castle and Cooke could proceed with pre-

underwriting, scheduled for November 22, 2021, and verify employment before Mrs. PoVey left

NHC. *Id.* ¶¶ 13, 15. Mr. Cannon stated that if any issues arose later, then any paystubs Mrs.

PoVey received from NHC in December 2021 would satisfy Castle and Cooke's employment

verification requirements. *Id.* ¶ 13.[3] Based on this conversation with Mr. Cannon, Mrs. PoVey

chose to resign from NHC and receive severance through December 2021. *Id.* ¶ 14. Mrs. PoVey

also arranged for her resignation date to be on November 22, 2021, the date Mr. Cannon had

given for pre-underwriting. *Id.* ¶ 15.

On December 14, 2021, Mrs. PoVey signed the loan application listing her current

employer as NHC, despite that she was actually self-employed.[4] Uniform Residential Loan

Application, ECF 51-1, Ex. 101 at 1. Two days later, on December 16, 2021, Castle and Cooke

performed an employment reverification, showing that Mrs. PoVey had separated from NHC on

November 22, 2021. Employment Reverification, ECF 51-4, Ex. 104. At the January 2024

evidentiary hearing, Mr. Cannon testified that he was never told about this employment

---

[3] During the January 5, 2024 hearing, Mr. Cannon testified that Mrs. PoVey never told
him that she was planning to leave her job with NHC before the mortgage closing date. Minutes
of Proceedings, ECF 54. Mr. Cannon also testified that he never told Mrs. PoVey that she could
leave her position with NHC and still remain in compliance with Castle and Cooke's
employment requirements. *Id.*

[4] The term "self-employed" is used by both Parties and this Court to describe Mrs.
PoVey's lack of salaried, active employment.

PAGE 3 – OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

reverification. Minutes of Proceedings, ECF 54. On the same day of the reverification, however, he learned from Castle and Cooke's underwriting team that Mrs. PoVey had opened a new credit card on December 10, 2021, and he asked her to provide information concerning the outstanding balance on that card, which she did. New Credit Inquiry Email, ECF 52-2 at 2–3, 8. On December 17, 2021, Mr. Cannon signed the loan documents on behalf of Castle and Cooke. Uniform Residential Loan Application, ECF 51-1, Ex. 101 at 8.

Despite the employment reverification showing that Mrs. PoVey was no longer employed at NHC, the loan was funded on December 20, 2021 with a monthly mortgage payment of $2,653.09. Text Messages between Caleb Cannon and Jamie PoVey, ECF 30, Ex. 2 at 2; Monthly Payment Report, ECF 51-6, Ex. 106; Uniform Residential Loan Application, ECF 51-1, Ex. 101 at 9. Shortly after Plaintiffs' loan was funded, Castle and Cooke packaged and sold the loan to another entity. Minutes of Proceedings, ECF 54.

On March 4, 2022, Mrs. PoVey received notice from Castle and Cooke regarding clerical errors that the Company discovered and corrected on the closing documents. 3/4/2022 Letter from Castle and Cooke, ECF 52. The letter did not reference Mrs. PoVey's employment status at closing.

Soon thereafter, Plaintiffs' mortgage with Castle and Cooke was selected for random quality control testing. Minutes of Proceedings, ECF 54. On March 30, 2022, Mr. Cannon informed Mrs. PoVey that Quality Control at Castle and Cooke had contacted him about employment verification for Plaintiffs' mortgage. Compl., ECF 1 ¶ 30. Mr. Cannon requested Mrs. PoVey provide evidence of payment from NHC post-dating the mortgage's closing on December 20, 2021. *Id.*; *see also* Text Messages between Caleb Cannon and Jamie PoVey, ECF 30, Ex. 2 at 2. Mrs. PoVey provided screenshots showing bank deposits by NHC. Compl., ECF 1

¶ 31; *see also* Text Messages between Caleb Cannon and Jamie PoVey, ECF 30, Ex. 2 at 2. Mr. Cannon responded that he was "sure" the screenshots would satisfy Quality Control and promised to let Mrs. PoVey know if Castle and Cooke needed paystubs to verify her post-December 20, 2021 employment. Text Messages between Caleb Cannon and Jamie PoVey, ECF 30, Ex. 2 at 3. Later that day, Mr. Cannon asked Mrs. PoVey for her last paystub in December from NHC, stating that he believed the paystub would satisfy Castle and Cooke Quality Control. *Id.* At the evidentiary hearing, Mr. Cannon testified that he asked for Mrs. PoVey's December 2021 paystubs because he believed that Mrs. PoVey was still employed by NHC before the loan closed and that the March 2022 employment reverification results were in error. Minutes of Proceedings, ECF 54.

On May 3, 2022, Mr. Cannon again asked Mrs. PoVey whether she had obtained her December 2021 paystubs from NHC. 5/3/2022 Paycheck Stubs Email, ECF 53. Mr. Cannon told Mrs. PoVey that she needed to provide him thirty days of paystubs from before December 20, 2021. *Id.* Mr. Cannon also asked Mrs. PoVey to clarify when she left her employer. *Id.* In response, Mrs. PoVey asked multiple questions about the documentation requested, but did not answer when she left NHC. *Id.* No evidence in the record shows how this discussion was resolved.

Around this time, Castle and Cooke was obligated to buy back its loan to Mrs. PoVey, which it had already sold to another entity, because of the discrepancy between the employment verification—which showed that she had not been employed at the time of the loan closing—and Mrs. PoVey's loan application. Minutes of Proceedings, ECF 54.

Then, on July 14, 2022, although Plaintiffs had made every monthly mortgage payment, Plaintiffs received a notice of intent from Castle and Cooke to foreclose on their home. Compl.,

ECF 1 ¶¶ 32, 34. When Plaintiffs asked about this notice, Sam Bateman, Castle and Cooke Vice President of Compliance, told Plaintiffs that paystubs do not confirm employment at the time of closing. *Id.* ¶ 38.[5] As established during the evidentiary hearing, Plaintiffs and Ms. Bateman exchanged emails in July 2022 discussing Mrs. PoVey's employment status, though neither party submitted these emails to this Court. Minutes of Proceedings, ECF 54. Ms. Bateman testified, in these emails, Ms. Bateman asked Mrs. PoVey whether she was employed by NHC at the time the mortgage transaction closed. *Id.* Mrs. PoVey did not answer Ms. Bateman's precise question, and instead responded that she was employed by NHC during the period of time when employment was required. *Id.* Ms. Bateman notified Mrs. PoVey that by leaving NHC before the closing date, she had breached the mortgage agreement and was in default. Compl., ECF 1 ¶ 37; *see also* Deed of Trust, ECF 51-3, Ex. 103 at 6, § 8.

In the following months, the Parties unsuccessfully attempted to resolve the foreclosure issue. Then, in December 2022, Plaintiffs were notified that Defendant LoanCare, LLC would now be servicing the loan and that because the foreclosure process had formally begun in September 2022, LoanCare would not accept Plaintiffs' mortgage payments. Compl., ECF 1 ¶¶ 48–49. Nonetheless, Plaintiffs mailed their December 2022 mortgage payment to LoanCare, which LoanCare refused to accept. *Id.* ¶ 51. Until LoanCare's refusal of the payment, Plaintiffs made every monthly mortgage payment in the amount of $2,653.09 from January 2022 through

---

[5] As Ms. Bateman testified, paystubs may verify employment only during the Castle and Cooke quality control process that follows a loan's closing. Minutes of Proceedings, ECF 54. But at the time of closing, Castle and Cooke will only accept written or verbal confirmation from an employer to verify employment. *Id.* Ms. Bateman also testified that Castle and Cooke policy requires at least one year of self-employed income history before a mortgage for a self-employed borrower can be approved. *Id.*

November 2022. *See id.* ¶ 55; Monthly Payment Report, ECF 51-6, Ex. 106; Uniform

Residential Loan Application, ECF 51-1, Ex. 101 at 9.

The Parties then continued their attempts to resolve the threatened foreclosure for about

nine more months, until September 22, 2023, when Plaintiffs launched this suit against

Defendants Castle and Cooke and LoanCare.[6] *Id.* ¶¶ 52–65. In their Complaint, Plaintiffs assert

the following claims: (1) violation of the Oregon Mortgage Lender Law under O.R.S.

86A.151(1)(a) against Castle and Cooke; (2) Promissory Estoppel against Castle and Cooke; (3)

Breach of Contract against Castle and Cooke; (4) Breach of the Covenant of Good Faith and Fair

Dealing against both Defendants; (5) violation of the Fair Debt Collection Practices Act against

LoanCare; and (6) violation of the Oregon Unfair Trade Practices Act against both Defendants.

*Id.* ¶¶ 69–98.

On the same day they began this suit, Plaintiffs filed a Motion for Temporary Restraining

Order. TRO & PI Mot., ECF 2.[7] After hearing oral argument, this Court granted Plaintiffs'

Motion for Temporary Restraining Order on November 3, 2023. Minutes of Proceedings, ECF

31.[8] At the hearing, this Court scheduled a preliminary injunction evidentiary hearing for

November 30, 2023. *Id.* Then, on November 17, 2023, the Parties jointly emailed this Court,

seeking to extend the TRO and delay the preliminary injunction hearing until January 2024. ECF

38. This Court re-set the hearing for January 5, 2024. *Id.*

---

[6] Defendant LoanCare has not been involved in the temporary restraining order or the preliminary injunction proceedings before this Court.

[7] Plaintiffs' Motion for Temporary Restraining Order from September 22, 2023 also operates as the instant motion for preliminary injunction before this Court.

[8] Oral argument for the temporary restraining order was delayed from September 29. 2023 to November 3, 2023 after Castle and Cooke called off a scheduled foreclosure auction. ECF 8; ECF 10; ECF 13.

On that date, this Court held an evidentiary hearing to determine whether Plaintiffs' TRO should be converted to a Preliminary Injunction. Minutes of Proceedings, ECF 54. Mrs. PoVey testified for Plaintiffs, and Mr. Cannon and Ms. Bateman testified for Defendants. *Id.* After hearing the testimony and considering the evidence submitted by the Parties, this Court stated on the record that it would grant Plaintiffs' Motion for Preliminary Injunction and convert the existing TRO into a preliminary injunction. *Id.* This Court also stated that an opinion was forthcoming. *Id.* This Court now issues the instant opinion to further explain its disposition.

## DISCUSSION

A plaintiff seeking a preliminary injunction must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs bear the burden of demonstrating that they meet all four of the *Winter* factors. *DISH Network Corp. v. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). Even if a plaintiff cannot show a definitive likelihood of success on the merits, when the balance of hardships "tips sharply towards the plaintiff," the plaintiff need demonstrate only "serious questions going to the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

For the reasons below, Plaintiffs have satisfied their burden by showing that there are serious questions going to the merits here and that the remaining three *Winter* factors likewise weigh in Plaintiffs' favor. This Court will issue a preliminary injunction against Defendant Castle and Cooke and, at the same time, order Plaintiffs to post a monthly bond equivalent to the agreed upon monthly payments listed in their mortgage refinancing agreement.

PAGE 8 – OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

## A.  Irreparable Harm

First, this Court holds that Plaintiffs face irreparable harm absent a preliminary injunction. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted). Defendant Castle and Cooke's decision to foreclose Plaintiffs' home counts as such a harm, *see* Compl., ECF 1 ¶¶ 32, 44, 52, because the Ninth Circuit has been clear that the threatened foreclosure of property presents an irreparable harm. *Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) ("It is well-established that the loss of an interest in real property constitutes an irreparable injury." (citations omitted)). Accordingly, the irreparable harm prong favors Plaintiffs.

## B.  Likelihood of Success on the Merits

Plaintiffs have also established serious questions going to the merits of their Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing claims.[9]

### 1.  Breach of Contract

This Court first turns to Plaintiffs' Breach of Contract claim. To properly state a claim for breach of contract under Oregon law, Plaintiffs must allege (1) the existence of a contract; (2) the relevant terms of the contract; (3) Plaintiffs' full performance and lack of breach; and

---

[9] Although Plaintiffs did not explicitly request injunctive relief in their Complaint, *see* Compl., ECF 1, Plaintiffs' Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing claims request other equitable relief—namely, specific performance of the mortgage refinancing agreement. *Id.* ¶¶ 80, 85. Because, as currently pled, the rest of Plaintiffs' claims solely seek monetary relief, this Court considers only the two foregoing claims for the purposes of the preliminary injunction motion.

(4) Defendant's breach resulting in damage to Plaintiffs. *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996).

At core, the success of Plaintiffs' Breach of Contract claim turns on prong (3): specifically, whether Defendant Castle and Cooke breached the mortgage agreement with Plaintiffs turns on whether Plaintiffs breached the agreement first, and thus effectively terminated the agreement, by "g[iving] materially false, misleading, or inaccurate information" to Defendant Castle and Cooke. Deed of Trust, ECF 51-3, Ex. 103 at 6, § 8. Castle and Cooke argues that because Mrs. PoVey stopped working for NHC in November 2021, Plaintiffs breached the mortgage agreement by listing NHC as Mrs. PoVey's "current employer" on the Uniform Residential Loan Application Plaintiffs submitted to Castle and Cooke on December 14, 2021. Defendant Castle and Cooke's Response in Opposition to Preliminary Injunction, ECF 44 at 2; *see also* Uniform Residential Loan Application, ECF 51-1, Ex. 101 at 1 (listing NHC as current employer). Plaintiffs counter that Castle and Cooke "waived [its] right" to invoke the "materially false" statements clause by assuring Plaintiffs, both before and after December 20, 2021, that paystubs in December 2021 would suffice for Mrs. PoVey to receive refinancing. Plaintiffs' Reply ("Reply"), ECF 48 at 3; *see* Plaintiffs' Memorandum in Support of Preliminary Injunction ("Pls.' Memo"), ECF 47 at 6–7; *see also* Compl., ECF 1 ¶¶ 13–15; Text Messages between Caleb Cannon and Jamie PoVey, ECF 30, Ex. 2 at 1–3 (March 2022 text messages from Mr. Cannon stating that he believed paystubs from NHC in December 2021 would address Castle and Cooke Quality Control's concerns over employment verification).

Plaintiffs' waiver argument presents a serious question on the merits of their breach of contract claim. Waiver is the voluntary relinquishment of a known right. *Alderman v. Davidson*, 326 Or. 508, 513 (1998). A party to a written contract may waive a provision of that contract by

conduct or by oral representation. *Moore v. Mut. of Enumclaw Ins. Co.*, 317 Or. 235, 241 (1993). Unlike a modification of a contract, waiver can be accomplished unilaterally, and it need not be supported by consideration. *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 156 (2001). Waiver must be expressed unequivocally, *id.* at 157, and it is a question of fact that "depends on the 'particular circumstances of each case.'" *Ri Ky Roofing & Sheet Metal, LLC v. DTL Builders, Inc.*, 6:17-cv-01592-MK, 2019 WL 2453781, at *4 (D. Or. Mar. 22, 2019) (citation omitted), *findings and recommendation adopted by* 2019 WL 2453651 (June 11, 2019). Furthermore, even if there has not been an unequivocal waiver, "a party nevertheless may be estopped from relying on [the provision at issue] if that party led the other party to believe that the provision had been waived, and the other party relied on that perceived waiver." *Bennett*, 332 Or. at 158 (citations omitted).[10] At bottom, the purpose of waiver and estoppel is "that a party cannot, in practice, purport to no longer rely on a contractual right and subsequently invoke that right when it sees fit." *Claus v. Columbia State Bank*, Case No. 3:16-cv-01509-AC, 2019 WL 5624754, at *23 (D. Or. Oct. 30, 2019).

Here, at this stage of the litigation, there is starkly conflicting evidence regarding whether Mr. Cannon's actions constituted such waiver. Accordingly, there is a serious question on the merits as to whether Defendant Castle and Cooke is in breach of the mortgage refinancing agreement. Plaintiffs' and Defendant's respective positions are set forth below.

a.    <u>Plaintiffs' Arguments</u>. According to Plaintiffs, Mr. Cannon informed Mrs. PoVey in a November 2021 phone call that paystubs from her former employer would suffice to verify

---

[10] Promissory estoppel is best evaluated as a theory for breach of contract. *Neiss v. Ehlers*, 135 Or. App. 218, 227–28 (1995) ("In Oregon, it is well recognized that promissory estoppel is not a 'cause of action' in itself, but is a subset of and a theory of recovery in breach of contract actions." (citations omitted)).

employment for the purposes of refinancing, and, by so doing, Plaintiffs say, Mr. Cannon waived Castle and Cooke's right to enforce the "materially false" statement provision of the mortgage. Plaintiffs' assertion is supported by Mr. Cannon's March 30, 2022, text messages to Mrs. PoVey stating that he was "sure" screenshots of bank deposits by NHC would evidence her employment at the time the mortgage closed. Plaintiffs' assertion is also supported by Mr. Cannon's subsequent attempts in May 2022 to satisfy Castle and Cooke's Compliance Department by requesting that Mrs. PoVey provide paystubs received from NHC in December 2021. Moreover, Mr. Cannon texted Mrs. PoVey in March 2022 that Plaintiffs did "everything [Defendant Castle and Cooke] asked of [them]." Text Messages between Caleb Cannon and Jamie PoVey, ECF 30, Ex. 2 at 2.

The timeline of events leading up to the close of the mortgage transaction also offers some support to Mrs. PoVey's recollection of conversations with Mr. Cannon. Castle and Cooke obtained an employment reverification on December 16, 2021, showing Mrs. PoVey left NHC the month before. Yet Mr. Cannon did not ask Mrs. PoVey about the employment verification results before the mortgage transaction closed. Instead, Mr. Cannon signed the mortgage transaction the next day. But on the same day of the reverification, Castle and Cooke's underwriting team contacted Mr. Cannon about Mrs. PoVey's opening a new credit card, and in turn, Mr. Cannon asked her about the credit card. *See* New Credit Inquiry Email, ECF 52-2 at 8. Viewed in the light most favorable to Plaintiffs, Mr. Cannon's apparent decision to ignore the employment verification issue but probe Mrs. PoVey's new credit card suggests that Mr. Cannon indeed told Plaintiffs not to be concerned about Mrs. PoVey's employment status so long as she had December 2021 paystubs from NHC.

PAGE 12 – OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

b.    <u>Defendant Castle and Cooke's Arguments</u>. For its part, Defendant Castle and

Cooke also has evidence on the record supporting its position. According to Mr. Cannon, he

never had a conversation in November 2021 with Mrs. PoVey where she told him that she

planned to leave her job before the mortgage closed, nor did he tell Mrs. PoVey that she could

satisfy Castle and Cooke's employment requirements through paystubs.[11] Indeed, no

documentary evidence corroborates Mrs. PoVey's testimony that she had this conversation with

Mr. Cannon. In addition, as Mr. Cannon and Ms. Bateman both testified, it was not

Mr. Cannon's responsibility to review Mrs. PoVey's employment reverification from December

16, 2021. Minutes of Proceedings, ECF 54. Instead, the Castle and Cooke Mortgage Processing

Team was tasked with reviewing the employment reverification and notifying the loan originator

of any issues. *Id.* Mr. Cannon testified that Castle and Cooke Processing never notified him

about the employment verification issue before the loan's closing. *Id.* Finally, in Castle and

Cooke's telling, Mr. Cannon requested that Mrs. PoVey provide paystubs from NHC out of a

misunderstanding; as Ms. Bateman testified, paystubs may verify employment only during the

Castle and Cooke quality control process, which occurs after a loan's closing. *Id.* But at the time

of closing, Castle and Cooke only accepts written or verbal confirmation by the employer as

verification of employment. *Id.*

*    *    *

Ultimately, the conflicting evidence and testimony above must be resolved by a jury,

primarily through credibility determinations. Moreover, the witnesses discussed evidence not

---

[11] Despite Cannon's differing testimony, Cannon as the loan originator earns a commission on all mortgage transactions he closes. Minutes of Proceedings, ECF 54. This fact goes to Cannon's incentives to close the mortgage and ultimately his credibility regarding the Parties' contested phone conversations.

currently on the record, such as July 2022 emails between Castle and Cooke and Plaintiffs—

further evidence may come to light that can inform the jury. At this stage, therefore, the difficult,

fact-intensive issues underlying Plaintiffs' Breach of Contract claim means that there are serious

questions on the merits of that claim. Accordingly, the likelihood of success prong weighs in

Plaintiffs' favor.[12]

### 2. Good Faith and Fair Dealing

Plaintiffs' Breach of Covenant of Good Faith and Fair Dealing claim likewise involves

difficult, fact-intensive issues and thus presents a serious question on the merits. The duty of

good faith and fair dealing "serves to effectuate the objectively reasonable expectations of the

parties," *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615 (1995), and bars "improper

behavior in the performance and enforcement of contracts . . . to ensure that the parties 'will

refrain from any act that would "have the effect of destroying or injuring the right of the other

party to receive the fruits of the contract."'" *Klamath Off-Project Water Users, Inc. v.

Pacificorp*, 237 Or. App. 434, 445 (2010) (citation omitted).

As stated above, Plaintiffs have produced evidence supporting what they believed to be

an objectively reasonable expectation of the meaning of Castle and Cooke's mortgage

employment requirements. *See supra* at 11–12. Despite Castle and Cooke's contrary

understanding, there are serious questions at this stage as to whether Plaintiffs had an objectively

---

[12] Oregon Supreme Court precedent appears to undermine Defendant Castle and Cooke's
assertion that waiver and promissory estoppel arguments are barred by the statute of frauds.
*Davidson v. Wyatt*, 289 Or. 47, 57–58 (1980) ("When a party to a written contract asserts that the
other party has waived the benefit of a contract provision under circumstances giving rise to an
estoppel, the fact that the alleged waiver was in the form of an oral agreement may be significant
on the issue of whether it was reasonable to rely on the waiver. It does not, however, raise the
problem of the enforcement of an oral contract contrary to the statute of frauds.").

PAGE 14 – OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

reasonable expectation that paystubs satisfied Castle and Cooke's employment verification procedures and whether Castle and Cooke failed to act in good faith and fair dealing by foreclosing on Plaintiffs' home. Again, this means that the likelihood of success prong favors Plaintiffs at this stage.

## C. Balance of Equities

Next, this Court holds that the balance of equities favors Plaintiffs as well. "The 'balance of equities' concerns the burdens or hardships to [Plaintiffs] compared with the burden on Defendant[] if an injunction is ordered." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (citation omitted). Because the value of Plaintiffs' home far exceeds the mortgage balance, Castle and Cooke would likely be able to recover the entire outstanding loan amount if a foreclosure sale was permitted following a full trial on the merits. *See* Deed of Trust, ECF 51-2, Ex. 102 at 1 (stating the principal loan balance at the time of refinancing as $472,833); Defendant Castle and Cooke's Response in Opposition to Temporary Restraining Order, ECF 21 at 5 n.1 (stating the property's value as $826,400) (citation omitted). Thus, Castle and Cooke has not shown how it would experience a significant burden if this Court granted a preliminary injunction. On the other hand, Plaintiffs would lose their home at foreclosure auction if a preliminary injunction were not granted, which, as stated above, constitutes irreparable harm. Accordingly, the equities tip sharply toward Plaintiffs at this stage.

## D. Public Interest

This Court also holds that a preliminary injunction would be in the public interest. Plaintiffs never missed a monthly mortgage payment until LoanCare refused to honor Plaintiffs' checks beginning in December 2022. Compl., ECF 1 ¶¶ 49, 51, 55, 57. District courts commonly find that preventing improper foreclosure is in the public interest. *See, e.g.*, *Phillips v. Specialized Loan Servicing LLC*, Case No. EDCV 20-1819 JGB (SPx), 2021 WL 6751976, at *2

PAGE 15 – OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

(C.D. Cal. Nov. 5, 2021) ("The public interest in preventing improper foreclosures and in enforcing laws designed to protect the public interest is high."); *Dumas v. First N. Bank*, No. CIV.S-10-1523 LKK/DA, 2011 WL 567358, at *2 (E.D. Cal. Feb. 15, 2011) ("It is in the public interest to require lenders to comply with the California statutes enacted to protect homeowners from unnecessary foreclosures."). That reasoning applies with full force here, and the public interest therefore weighs in Plaintiffs' favor at this stage.

## E.  Security

Finally, although this Court grants Plaintiffs' Motion for Preliminary Injunction, Plaintiffs must provide security to Defendant Castle and Cooke in the form of a monthly payment of $2,653.09, consistent with the "original terms of the refinance agreement." Complaint, ECF 1 at 22 (Prayer for Relief ¶¶ 3–4). Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The bond requirement serves two purposes: (1) to create a fund to make whole a party wrongly enjoined and (2) to provide an efficient means of recovery for such a party. *C.C. ex rel. Ciriacks v. Cypress Sch. Dist.*, CASE NO. SACV 11-352 AG (RNBx), 2011 WL 13131236, at *2 (C.D. Cal. Aug. 22, 2011) (citation omitted). "The district court is afforded wide discretion in setting the amount of the bond . . . ." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citation omitted).

Applying this rule, district courts have found it appropriate to order plaintiffs challenging foreclosures to make their mortgage payments during the pendency of the case. *See, e.g.*, *Tierney v. Carrington Mortg. Servs., LLC*, Case No. C20-1245RSM, 2021 WL 1146114, at *5 (W.D. Wash. Mar. 25, 2021) (imposing a monthly bond of $1,889.51, the amount of plaintiff's monthly

mortgage payment); *Eberling v. R.M. Sterling Mortg. Servs., Inc.*, No. SACV 10–1831 AG
(RNBx), 2011 WL 2419465, at *2 (C.D. Cal. Apr. 6, 2011) (imposing a bond of "monthly
payments equal to the monthly payments before the refinance," that is, $2,275 a month); *Shaw v.*
*Specialized Loan Servicing, LLC*, No. CV 14–00783 MMM (MRWx), 2014 WL 3362359, at *9
(C.D. Cal. July 9, 2014) (requiring plaintiff "to post a bond equal to the monthly payments
required under [a] loan modification" which would rise gradually from $1,659.01 a month to
$2,572.61 a month); *Magana v. Wells Fargo Bank, N.A.*, No. C 11–03993 CW, 2011 WL
4948674, at *2 (N.D. Cal. Oct. 18, 2011) (imposing a monthly bond of $3,000); *Tamburri v.*
*Suntrust Mortg. Inc.*, 2011 WL 2654093, at *6 (N.D. Cal. July 6, 2011) (imposing a monthly
bond of $2,000).

      This Court finds it appropriate to impose such an order here. This is so that Defendant
Castle and Cooke can more easily recover some of its losses should the preliminary injunction
later be deemed to have been issued in error. Security is particularly appropriate given that this
Court has not found that Plaintiffs are likely to succeed on the merits but instead that there are
serious questions as to the merits of Plaintiffs' claims. *See Mazed v. JP Morgan Chase Bank,*
*N.A.*, CASE NO. SACV 11-814-JST, 2011 WL 13131284, at *5 (C.D. Cal. Aug. 23, 2011) ("In
light of its determination that there are serious questions going to the merits of Plaintiff's claims,
but that Plaintiff has not yet shown a likelihood of ultimate success, the Court deems it
appropriate to require Plaintiff to pay monthly rent on the Property" equivalent to "his monthly
mortgage payment."), *aff'd by* 471 F. App'x 754, 755 (9th Cir. 2012). Finally, this Court notes
that the security it is imposing is consistent with Plaintiffs' requested remedy of specific
performance under the refinancing agreement. *See* Complaint, ECF 1 at 22 (Prayer for Relief

¶¶ 3–4). The first payment must be made on February 5, 2024, and every following payment must be made on the fifth of each month.

## CONCLUSION

In summary, Plaintiffs have satisfied the Ninth Circuit's "serious questions" variation of the four *Winter* factors. Plaintiffs are therefore entitled to a preliminary injunction until a trial on the merits can be held. Accordingly, this Court GRANTS Plaintiffs' Motion for Preliminary Injunction, ECF 2. During the pendency of this case, Defendant Castle and Cooke is enjoined from selling Plaintiffs' home at a foreclosure auction.

In addition, beginning on February 5, 2024, Plaintiffs are ORDERED to pay the monthly mortgage amount under their mortgage refinancing agreement of $2,653.09 as security under Federal Rule of Civil Procedure 65(c). Every payment must be paid on the fifth day of each month during the pendency of this case. The bond must be paid to the Clerk of the Court in compliance with this Court's Order to Deposit Funds, ECF 55, and Local Rules 65.1 and 67.

**IT IS SO ORDERED.**

DATED this 12th day of January, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge